# UNITED STATES DISTRICT COURT

**NORTHERN DISTRICT OF NEW YORK**

**KAYLA ORSELL,**
 Plaintiff,

v.



U.S. DISTRICT COURT – N.D. OF N.Y.

**FILED**

**Jul 18 - 2025**

John M. Domurad, Clerk

**City of Gloversville;**
**JOHNATHON SPYCHALSKI,** Detective, Gloversville Police Department;
**LUCAS NELLIS,** Lieutenant, Gloversville Police Department;
**JAMES P. RILEY, Esq.,** District Attorney, Fulton County District Attorney's Office;
**THE HONORABLE TRACI DIMEZZA,** Gloversville City Court Judge;
**KYLE L. DAVIS,** Public Defender;
**JAMES P. MELITA,** Private Defense Counsel;
**JASON MITCHELL ABDALLA,** Confidential Informant;
**KEITH ACKERKNECHT,** Jail Captain, Fulton County Jail;
**UNKNOWN INDIVIDUALS WHO INTERFERED WITH PLAINTIFF'S LEGAL MAIL AND COMMUNICATIONS.**
 Defendants.

**Case No.:** [To Be Assigned]
          1:25-cv-963 (AMN/PJE)

**JURY TRIAL DEMANDED**

# COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (42 U.S.C. § 1983)

## I. JURISDICTION AND VENUE

1.  This action arises under **42 U.S.C. § 1983** for violations of Plaintiff's constitutional rights under the **First, Fourth, Sixth, Eighth, and Fourteenth Amendments** to the United States Constitution.

2.  This Court has jurisdiction pursuant to **28 U.S.C. § 1331, § 1391, and § 1343**, as this case involves federal questions and civil rights violations.

3.  Venue is proper in the **Northern District of New York** under **28 U.S.C. § 1391(b)(2)** because all acts complained of occurred within this district.  Also, all defendants are residents of the Northern District of New York which makes this court a proper venue under **28 U.S.C. § 1391(b)(1).**

4.  **U.S.C 28 § 1331** is the general federal question jurisdictional statute, which grants federal district courts jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States".

5.  Under **U.S.C § 1343(a)** the district courts shall have original jurisdiction of any civil action authorized by law to be commenced by any person.

6.  Under **U.S.C § 1343(a)(3)** plaintiffs can petition to a district court to redress the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured by the Constitution of the United States or by any Act of Congress providing for equal rights of citizens or of all persons within the jurisdiction of the United States.

## II. PARTIES

**Plaintiff**:

**Kayla Orsell** is a resident of Johnstown, New York, and is bringing this suit pro se.

**Defendants**:

**City of Gloversville** – The municipality responsible for overseeing the Gloversville Police Department and ensuring its officers comply with constitutional standards. The City is liable under *Monell v. Department of Social Services,* 436 U.S. 658 (1978), as its policies, customs, and failure to train officers directly contributed to Plaintiff's unlawful arrest, detention, and prosecution.

**Detective Johnathon Spychalski** (Gloversville Police Department) – Engaged in fabricating evidence, coercing a witness, and manipulating investigative procedures to support Plaintiff's unlawful arrest.

**Lieutenant Lucas Nellis** (Gloversville Police Department) – Participated in the illegal investigation, ignored exculpatory evidence, and failed to prevent constitutional violations.

**James P. Riley, Esq**. (Fulton County District Attorney) – Prosecuted Plaintiff despite knowing the arrest lacked probable cause and withheld exculpatory evidence.

**Judge Traci DiMezza** (Gloversville City Court) – Imposed excessive bail, denied Plaintiff's due process rights, and participated in coercive plea negotiations.

**Attorney Kyle Davis** (Public Defender) – Provided ineffective assistance of counsel, failed to challenge constitutional violations, and was reassigned to Plaintiff's case after her private attorney withdrew when she attempted to withdraw her coerced plea.

**Attorney James Melita** (Private Defense Counsel) – Paid by Plaintiff's father but later recused himself when Plaintiff sought to withdraw her plea, abandoning her defense.

**Jason Mitchell Abdalla** (Confidential Informant) – Acted as a government informant to entrap Plaintiff, engaged in sexual misconduct under false pretenses, lied about his STI status, and placed Plaintiff at risk of HIV exposure.

**Keith Achrenight** (Jail Captain, Fulton County Jail) – Oversaw jail operations, denied Plaintiff necessary medical treatment, placed Plaintiff at risk of inmate assault, and disregarded security classifications.

**Unknown Individuals** – Those responsible for interference with Plaintiff's legal mail, fraudulent court documents, and obstruction of legal filings.

## III. FACTUAL ALLEGATIONS

**A. Failure to Train and Supervise Police Officers (Municipal Liability under Monell v. Department of Social Services, 436 U.S. 658 (1978))**

1. The City of Gloversville is responsible for the policies, training, supervision, and discipline of the Gloversville Police Department, including Defendants Detective Johnathon Spychalski and Lieutenant Lucas Nellis.

2. The City has a pattern and practice of failing to supervise, discipline, and prevent unlawful police conduct, including:

3. Encouraging officers to fabricate evidence and coerce statements from witnesses.

4. Failing to discipline officers who engage in constitutional violations, including unlawful arrests and suppression of exculpatory evidence.

5. Ignoring prior complaints of misconduct against officers, allowing a culture of impunity.

6. Detective Spychalski and Lieutenant Nellis unlawfully arrested Plaintiff without probable cause, fabricating witness statements and suppressing evidence in violation of *Brady v. Maryland,* 373 U.S. 83 (1963).

7. Despite clear evidence of misconduct, the City of Gloversville failed to intervene, discipline its officers, or correct these unconstitutional practices, making it liable under Monell.

## B. Unlawful Arrest and Fabricated Evidence (Fourth Amendment Violation)

1. On **April 9, 2024**, Plaintiff was arrested and charged with **Kidnapping in the Second Degree** and **Assault in the Second Degree**, despite a **lack of probable cause**.

2. The **sole witness against Plaintiff was under the influence of drugs** at the time and provided **contradictory statements**, which were altered by **Detective Spychalski**.

3. Detective Spychalski **tampered with the witness statement**, placing a **diagonal line across the Miranda waiver** and coercing the witness to "just sign here" (See Exhibit H).

4. No additional witnesses were presented, and no forensic or physical evidence linked Plaintiff to the alleged crime.

5. The **911 call from the alleged incident was withheld** by the prosecution in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

## C. Excessive Bail and Unlawful Pretrial Detention (Eighth and Fourteenth Amendments Violation)

*At Plaintiff's arraignment, Judge Traci DiMezza imposed a bail amount of $50,000 cash / $75,000 partially secured bond / $100,000 fully secured bond, despite:*

1. Plaintiff's **lack of criminal history for over a decade**.

2. Plaintiff's **permanent disability status**.

3. The **reduction of two serious violent felony charges to a misdemeanor**.

4. Bail was **arbitrarily maintained at excessive levels**, causing financial hardship for Plaintiff's family.

5. During a **bail review hearing on May 5, 2024**, Judge DiMezza **privately conferred** with the District Attorney **off the record**, then denied bail reduction.

6. Plaintiff was **unlawfully detained for over 180 days** without a **preliminary hearing**, violating the due process requirements set in *Gerstein v. Pugh*, 420 U.S. 103 (1975), and *County of Riverside v. McLaughlin*, 500 U.S. 44 (1991).

## D. Coerced Plea, Attorney Misconduct, and Post-Plea Retaliation (Sixth and Fourteenth Amendments Violation)

1. The plaintiff was arraigned with court appointed attorney Allen Day as her representation until a more permanent court appointed attorney could take over. During the arraignment the plaintiff was not informed of the reason for the arrest, elements of the crimes alleged, or given any chance to speak of her innocence.

2. Judge DiMezza initially set bail at $100,000 fully secured bond, $75,000 partially secured bond, or $50,000 cash when no probable cause for the arrest existed.

3. The plaintiff was remanded to Fulton County Jail for 32 days before being released on a lowered bail which was still excessive at $50,000 partially secured bond. The plaintiffs father paid Bernardo Bondsman of Saratoga $3,260 and was forced to put a lien on one of his rental properties which is the maximum amount of cash for a partially secured bond of $50,000. The lien on her father's property was illegal, unnecessary, and punitive.

4. At the plaintiff's second court appearance a week after her arraignment she was assigned attorney Kyle Davis. The maximum allowable time to hold a preliminary hearing or secure an indictment according to New York State Criminal Procedure Law 180.80 had already passed. The plaintiff had not waived her preliminary hearing or indictment.

5. Attorney Kyle Davis visited the plaintiff after she had spent 18 days in jail and told her that the two charges against her "looked like bullshit". He said the discovery was "minimal" and did not produce any documents for her to inspect. He then informed her that her first plea offer was five years in prison. The plaintiff informed attorney Davis of her intent to go to trial and attorney Davis told her she would get twenty five years if she

lost trial. The plaintiff told him that she was confident in her innocence and still wished to go to trial.

6. After the plaintiffs father bailed her out she was able to access legal materials which were nearly impossible to view given the fact that only two tablets used by inmates in Fulton County Jail existed for up to eleven other inmates. Also, there was a two hour limit to use the law library which was exclusively on the tablets. The plaintiff was forced to compete with other inmates who also wanted to use the tablets for legal research, phone calls, and entertainment purposes. This put her at an unreasonable risk of assault and she was never able to access the law library for even an hour for one of the days she was incarcerated.

7. Upon getting home and having access to legal materials the plaintiff' discovered that she was eligible for release on her own recognizance under NYS CPL 180.80. She called attorney Davis and asked him if she had unknowingly waived a preliminary hearing or indictment to which he replied that she did not. She then asked him why had she not been released on her own recognizance after the 144 hours legally allowed by NYS CPL 180.80. Attorney Davis replied "you got bailed out so why does it matter?"

8. **The Plaintiff' upon arrival at her residence found her apartment was completely ransacked and destroyed.** Also, nearly her entire SSI check was missing from her account. Upon later discovery she did find out that her co-defendant had possession of her cellular phone which she left in her car before they both entered the Gloversville Police Department to give voluntary statements. She also found record of this co-defendant, a Mr. Jason Mitchell Abdalla, had been stealing money out of her account before her arrest. Mr. Abdalla was responsible for the incident leading to her arrest and he was rumored to have not been jailed. In spite of the fact that the Gloversville Police

Department was aware that Mr. Abdalla committed a serious violent crime he was recruited to work as a confidential informant. He had the two violent felonies that he shared with the Plaintiff' entirely dismissed as well as two other serious non related drug felonies and two A misdemeanors dismissed.

9. The Plaintiff' became romantically and intimately involved with Mr. Abdalla immediately after he had used lies and rumors to cause a break up between her and her fiancée of six years. Mr. Abdalla knew of the plaintiffs past charge over ten years prior for mail ordering drugs and persistently attempted to get her to assist him in mail ordering drugs. She declined numerous times and Mr. Abdalla acted very angry at her non compliance. The Plaintiff believes that Mr. Abdalla, with assistance from the Gloversville Police, was attempting to frame her for mail order drugs because her former fiancée found a blue laptop that was nearly identical to the Plaintiffs own laptop in her home when he entered to take care of her rescued and needy pet parrots. He removed the laptop and refused to give it to Mr. Abdalla's mother who arrived at the Plaintiffs house immediately after the arrest demanding the laptop that was inside of the plaintiffs apartment. Mr. Abdalla took full advantage of a damsel in distress, likely in an attempt to relieve himself of the charges he was already facing.

10. The Plaintiff began working on a **Habeas Corpus § 28 2241** petition to the Northern District of New York Court due to lack of any other remedies and the need for immediate intervention.

11. Upon informing her father that she was going to file the **Habeas Corpus** petition, the plaintiff's father **paid Attorney James Melita** to represent her.

12. **Attorney Melita pressured Plaintiff into pleading guilty**, stating that the prosecution would use false testimony and correct falsified evidence if she did not accept a plea. Attorney Melita used the Plaintiffs father to coerce her guilty plea in spite of the fact she wanted to go to trial by insisting that her father who does not understand the judicial system be present every time they met to speak. He also told the Plaintiffs father that going to trial would cost him more money when he already was heavily burdened by the cost of supporting her with the excessive bail and the payments attorney Melita had already received.

13. The petitioner attended a pre-sentencing investigation with Fulton County probation officer Heidi Logan and when asked what happened she admitted that her co-defendant, Mr. Jason Abdalla, had assaulted the victim and may even be guilty of kidnapping depending on how the law was interpreted but denied injuring him. She told Mrs. Logan that she was guilty of being in the wrong place at the wrong time and having no business being in a place like the home where the incident occurred. She claimed that she was guilty of "harassment at best".

14. Plaintiff later **attempted to withdraw her coerced plea** and Mr. Melita then ushered her into a conference room in the courthouse with her father whom insisted he had to be present because he paid to retain Mr. Melita. The petitioners father, assisted by Mr. Melita, attempted again to coerce her into taking the plea and insisted that she would go to prison forever based on fabricated evidence. The Petitioner denied taking the coerced plea once again. The judge, Mr. Melita, and district attorney James P. Riley went into the judges chambers for an extended period of time and she stood in front of the bench with severely crippling anxiety which was exacerbating her mental health conditions to the

point of nearly passing out. Petitioner heard what sounded like fighting in the judges chambers before they came back out. Judge DiMezza asked the petitioner why she wanted to withdraw her plea and she asserted that she believed that the United States Constitution still held relevance in that court as well as every other court of the United States. Judge DiMezza told the petitioner that she should be thankful she was offered such a great plea since the original charges were a class B and D felony. Petitioner left the courtroom and her father and Mr. Melita soon came outside where she was standing and told her that the probation officer who took her PSI was screaming in the courtroom that she was guilty and had admitted it, though she never said that. The plaintiff was horribly embarrassed and shaken with anxiety. Her aunt and another family member happened to be in court that day with her aunt's grandson which added to the embarrassment. Court was adjourned until court appointed counsel Kyle Davis could be reassigned in spite of Judge DiMezza being aware that he was dismissed previously for providing ineffective assistance.

15. **Judge DiMezza then reassigned Public Defender Kyle Davis**, who had previously provided **ineffective assistance**, to represent Plaintiff again. Attorney Davis called the plantiff out in the hallway of the court and asked her why she did not want to accept the plea for misdemeanor probation that Attorney James Melita coerced her into signing. She told him that she was innocent and didn't feel it was right to plead guilty when she was innocent. She then informed Mr. Davis that she had tried to file a **Habeas Corpus 28 § 2241** petition with the district court but that she believed it had been intercepted. Mr. Davis told her that Habeas Corpus was "only for inmates". To which she replied "that isn't true, any restriction of my liberty including bail counts". He asked her where she

read that and she replied "the jailhouse lawyers manual". Mr. Davis then told her that if Judge DiMezza remanded her back to jail he would immediately file a motion to vacate the plea. She agreed to go along with it, deeply fearing being separated from the two Quaker parrots her and her fiancee had rescued from a very abusive situation since they likely would not survive without her being able to buy and administrator there medication daily. Judge DiMezza said that she didn't think the petitioner should be granted probation due to failure to accept responsibility during her pre-sentencing investigation. Mr. Davis argued that he read the petitioners PSI and that she did accept some responsibility. Judge DiMezza then put the petitioner on pretrial release to determine if she was suitable for probation and adjourned court for nearly two months.

16. Petitioner did succeed at pre-trial release and was given probation at the next court date. She remains on probation and is in fear for her life and safety due to the fact that it seems the prosecution will stop at nothing to further violate her civil rights.

---

## E. Mail Theft and Forged Certified Mail Slips (First and Fourteenth Amendment Violations)

*Plaintiff has been subjected to systematic interference with her legal mail, which constitutes a violation of her First and Fourteenth Amendment rights by denying her access to the courts and obstructing justice.*

## 1. Stolen and Tampered Legal Mail

A. Plaintiff submitted critical legal filings, including a Habeas Corpus petition under **28 U.S.C. § 2241**, via certified mail through the USPS. However, tracking information reveals that the mail was never properly sent or received by the intended court.

B. When checking her USPS tracking records, Plaintiff discovered that her legal filings were either rerouted to unknown locations or falsely marked as "delivered" despite no court records showing receipt.

C. Plaintiff later received a fake court-stamped response with a forged judicial signature, falsely suggesting that her habeas petition had been processed and denied when, in reality, it never reached the court.

## 2. Forged Certified Mail Slips & Tracking Discrepancies

A. Plaintiff obtained certified mail slips from the fraudulent website PACERMonitor.com, which falsely showed her filings as "processed." However, the USPS tracking numbers attached to these slips show no record of mailing activity.

B. Screenshots of the forged mail slips and tracking inconsistencies are attached as Exhibit [X], demonstrating a deliberate effort to intercept Plaintiff's court filings.

## F. Legal Violations & Constitutional Claims

1. The theft, tampering, and forgery of legal documents violates Plaintiff's First Amendment right to petition the government for redress of grievances and her Fourteenth Amendment right to due process.

2. Under *Bounds v. Smith*, 430 U.S. 817 (1977), and *Lewis v. Casey*, 518 U.S. 343 (1996), prisoners and detainees have a constitutional right to access the courts, which extends to those subjected to undue restrictions on their legal filings.

3. The fraudulent use of court-stamped documents and USPS-certified mail tracking numbers constitutes criminal fraud and obstruction of justice under **18 U.S.C. § 241** and **§ 242**.

## G. Unlawful Arrest and Fabricated Evidence (Fourth Amendment Violation)

1. Plaintiff was arrested on April 9, 2024, and charged with Kidnapping and Assault despite a complete lack of probable cause.

2. The main perpatrator, Jason Mitchell Abdalla (a known confidential informant), was under the influence of drugs at the time and viculously beat the victim Corey Manzer with a metal bike frame.

3. The victim Corey Manzer was under the influence of drugs as well and provided multiple contradictory statements.

4. Detective Spychalski altered Abdalla's statement, placing a diagonal line across the Miranda waiver and coercing Abdalla to "just sign here."

5. The prosecution withheld exculpatory evidence, including a 911 call that contradicted Abdalla's account, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963).

## H. Sexual Misconduct and Entrapment by Jason Mitchell Abdalla

1. Abdalla had sexual intercourse with Plaintiff under false pretenses, constituting rape by deception, while working as a confidential informant.

2. He falsely claimed he had been tested for STIs, but after Plaintiff's incarceration, she discovered he had unprotected sex with an individual known to be HIV-positive.

3. Abdalla attempted to entrap Plaintiff into a federal drug crime, urging her to order drugs through the mail, knowing she had a federal drug conviction from 10 years prior.

4. When Plaintiff refused, Abdalla extorted her for money, falsely claiming he was in jail. Plaintiff sent money to the jail, but it was never accounted for.

## I. Medical Neglect and Deliberate Indifference (Eighth Amendment Violation)

1. For 16 days in jail, Plaintiff was denied vital medication for both mental and physical health conditions, causing severe withdrawal symptoms, medical distress, and psychological suffering.

2. Captain Keith Achrenight was responsible for jail operations and failed to ensure Plaintiff received necessary medical care.

3. Jail staff deliberately withheld an immediate STD test, instead administering doxycycline, a broad-spectrum antibiotic used to treat gonorrhea and chlamydia.

4. Plaintiff's STD test was delayed until after completing the antibiotics, effectively destroying any evidence of STI transmission.

### J. Failure to Protect and Unlawful Security Classification (Eighth Amendment Violation)

1. Plaintiff was improperly classified as a low-security inmate, despite a long-standing high-security designation due to mental health conditions.

2. While in custody, jail staff allowed two inmates to enter Plaintiff's cell off-camera and physically assault her.

3. One assailant was a male in transition who still had male genitalia.

4. Both attackers attempted to provoke Plaintiff into a physical altercation.

5. Jail officials took no action against the attackers, creating an unreasonable risk of harm in violation of the Eighth Amendment.

### K. Selective Prosecution and Due Process Violations (Fourteenth Amendment)

1. Abdalla's charges were quietly dismissed, including charges he shared with Plaintiff, while Plaintiff was forced into a coerced plea.

2. Attorney James Melita informed Plaintiff in a court conference room that the DA acknowledged her innocence but still wanted to charge her with something.

3. Plaintiff's parents were in the courtroom and overheard Abdalla's charges being dismissed

# IV. CAUSES OF ACTION

## COUNT ONE: Unlawful Arrest & Fabricated Evidence (Fourth Amendment Violation)

*(Against Detective Spychalski, Lieutenant Nellis, and DA Riley in Their Individual and Official Capacities)*

A. Defendants **fabricated evidence, tampered with witness testimony**, and **lacked probable cause** to arrest Plaintiff.

B. The unlawful arrest violated Plaintiff's **Fourth Amendment** rights under *Beck v. Ohio*, 379 U.S. 89 (1964).

---

## COUNT TWO: Ineffective Assistance of Counsel (Sixth Amendment Violation)

*(Against Attorneys Davis and Melita in Their Individual Capacities)*

A. Plaintiff **received ineffective assistance of counsel**, which led to an **unconstitutional guilty plea**.

B. The ineffective assistance prejudiced Plaintiff's defense in violation of *Strickland v. Washington*, 466 U.S. 668 (1984).

---

## COUNT THREE: Denial of Access to Courts (First and Fourteenth Amendments)

*(Against Unknown Parties and Judicial Defendants)*

The **theft of Plaintiff's habeas corpus petition** and the **forged court response** constituted **interference with access to the courts**, violating her First and Fourteenth Amendment rights.

---

## COUNT FOUR: Municipal Liability Under 42 U.S.C. § 1983

*(Against the City of Gloversville in its Official Capacity)*

**Plaintiff incorporates by reference all preceding paragraphs as if fully set forth herein.**

- o  The City of Gloversville, through its Police Department, had unconstitutional customs, policies, and practices that led to the violations of Plaintiff's Fourth, Sixth, Eighth, and Fourteenth Amendment rights.

- o  The City of Gloversville's failure to train and supervise its officers, including Defendants Detective Spychalski and Lieutenant Nellis, directly resulted in:

- o  The unlawful arrest of Plaintiff without probable cause.

- o  The fabrication of witness testimony and suppression of exculpatory evidence.

- o  The use of excessive bail and unlawful pretrial detention.

- o  The prosecution of Plaintiff despite the DA acknowledging her innocence.

o  The City knew or should have known about the unconstitutional practices of its
   police force but failed to take corrective action, thereby demonstrating deliberate
   indifference to the rights of its citizens.

o  As a direct and proximate result of the City's unconstitutional policies, customs,
   and deliberate indifference, Plaintiff suffered wrongful incarceration, reputational
   harm, emotional distress, financial loss, and psychological trauma.

o  The City of Gloversville is liable for damages under 42 U.S.C. § 1983

---

# V. PRAYER FOR RELIEF

**WHEREFORE, Plaintiff respectfully requests that this Court grant the
following relief:**

## 1. Injunctive Relief to Stop Harassment & Cyber Attacks

**A. An injunction prohibiting Defendants, law enforcement agencies, and any associated
individuals from engaging in further harassment, intimidation, retaliation, or interference
with Plaintiff's constitutional rights, including but not limited to:**

- Unlawful surveillance, cyber attacks, and electronic tampering.

- Tampering with Plaintiff's legal mail, communications, or court filings.

- Attempts to entrap Plaintiff or interfere with her case using confidential informants.

**B. An order compelling an immediate forensic audit and investigation into:**

- Cyber attacks against Plaintiff's devices, legal files, and communications.

- Tampering with Plaintiff's phone, internet, and SIM card data.

- Interference with Plaintiff's USPS mail, including legal filings.

## 2. Injunctive Relief to Correct Legal Violations

**C. An injunction vacating Plaintiff's plea agreement, as it was unconstitutionally obtained through coercion, ineffective counsel, and prosecutorial misconduct.**

**D. An injunction staying the enforcement of Plaintiff's probation pending the resolution of this case.**

**E. A declaratory judgment that Plaintiff's excessive bail was unconstitutional, along with an order directing reimbursement of all improperly imposed financial penalties and liens.**

**F. An order enjoining further enforcement of Plaintiff's unconstitutional sentence, including any continued supervision under probation.**

## 3. Demand for Investigation & Criminal Accountability

**G. An order directing an independent federal investigation into:**

- The fraudulent court documents and forged judicial signatures in Plaintiff's habeas corpus filing.

- The role of law enforcement in obstructing justice, including their use of confidential informants to entrap Plaintiff.

- The involvement of the Gloversville and Johnstown Police Departments in interfering with Plaintiff's digital and personal privacy.



- Misconduct by prosecutors, public defenders, and private defense attorneys, including coercion of Plaintiff's plea.

**H. A court directive to suspend the confidential informant status of individuals involved in fabricating evidence, coercing testimony, and targeting Plaintiff.**

---

## 4. Monetary Compensation for Damages

**I. Compensatory and punitive damages against all Defendants in an amount to be determined at trial, for:**

- Emotional distress, mental anguish, and reputational harm caused by false criminal charges and coercion.

- Medical damages and harm from being denied treatment and medication while in custody.

- Financial losses from excessive bail, legal fees, destroyed property, and lost opportunities.

---

**J. An award of attorney's fees and litigation costs under 42 U.S.C. § 1988(b).**

**K. Compensatory and punitive damages for defamation, emotional distress, and reputational harm caused by the slanderous and false newspaper article and radio broadcast that:**

- Falsely alleged that Plaintiff stabbed the victim in the face and neck repeatedly, despite the existence of exculpatory evidence proving otherwise that was withheld by law enforcement.

- Was published on the front page of the local newspaper the day before Plaintiff's court appearance, exposing her to public ridicule, humiliation, and prejudice in her legal proceedings.

- Was included in the police blotter section on a separate occasion, ensuring continued reputational damage.

- Contained no disclaimer stating that Plaintiff was "innocent until proven guilty," instead presenting the allegations as established fact, violating basic journalistic and constitutional fairness standards.

- Was written by Gloversville Police Captain Bradley Schaffer, indicating government involvement in the spread of defamatory and prejudicial information.

- Contaminated any potential jury pool from the outset, making it nearly impossible for Plaintiff to receive a fair trial. The inflammatory and unsubstantiated claims were widely circulated, ensuring that any jurors selected for Plaintiff's case would have been exposed to biased and prejudicial information before hearing any actual evidence.

- These false public statements directly impacted Plaintiff's personal relationships, employment prospects, emotional well-being, and ability to receive a fair trial, constituting a violation of her due process rights under the Fourteenth Amendment and potential defamation per se under state law.

---

**L. An order compelling an independent federal investigation into the interception and forgery of Plaintiff's legal mail, including:**

- Examination of forged certified mail slips and USPS tracking records.

- A forensic audit of Plaintiff's legal filings, court responses, and mail logs to determine who tampered with her documents.

- Referral to the U.S. Postal Inspection Service and DOJ Civil Rights Division for criminal prosecution of those responsible.

## 5. Additional Relief

**M. Issue an injunction requiring the City of Gloversville to reform its police training and disciplinary procedures to prevent further constitutional violations.**

**N. Award compensatory and punitive damages against the City of Gloversville for its role in Plaintiff's unlawful arrest and prosecution.**

**O. Any further relief that this Court deems just and proper in the interests of justice.**

**Respectfully submitted,**

_Kayla Orsell (signature)_ **Dated: 03/21/2025**

**Kayla Orsell**

**81 ½ Chestnut St.**

**Johnstown, NY 12095**

**(518)-291-1463**

**kaylaorsell2@gmail.com**