**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

───────────────────────────────

KAYLA ORSELL,

                           Plaintiff,            1:25-CV-0963
     v.                                         (GTS/PJE)

CITY OF GLOVERSVILLE, et al.,

                           Defendants.

───────────────────────────────

**APPEARANCES:**

Kayla Orsell
81 ½ Chestnut Street
Johnstown, New York 12095
Plaintiff pro se

**PAUL J. EVANGELISTA**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION & ORDER

Plaintiff pro se Kayla Orsell[1] commenced this action on July 18, 2025, with the filing of a complaint and applications for leave to proceed in forma pauperis. *See* Dkt. No. 1 ("Compl."), Dkt. Nos. 2, 6, 11. She has also filed various other motions for relief: a motion to file electronically, a motion compel the United States Marshals to come to her residence to retrieve evidence, a Motion to Appoint Counsel, a Motion for a

---

[1] Plaintiff has commenced other actions in this District. *See* 1:25-cv-00961-MAD-TWD, *Orsell v. Orsell, et al.*; 1:25-cv-00962-ECC-DJS (administratively closed 7/22/25); 1:25-CV-0962 (ECC/DJS), *Orsell v. Fulton County Probation Department, et al.* (Report-Recommendation & Order recommending dismissal pending); 1:25-cv-01456-BKS-TWD, *Orsell v. Spychalski, et al.* (administratively closed 10/24/25); 9:25-cv-01455-AJB, *Orsell v. Emery* (habeas corpus, administratively closed 10/23/25); 9:24-cv-01389-LEK, *Orsell v. Spychalski et al.* (habeas corpus, pending).

Preliminary Injunction,[2] and a Motion to Seal the Record.[3]  *See* Dkt. Nos. 3, 4, 10, 12, 13.  The Court has reviewed plaintiff's various in forma pauperis applications and concludes that she financially qualifies to proceed in forma pauperis.[4]  *See* Dkt. Nos. 1, 6, 11.  As the undersigned has granted plaintiff's IFP application, a review of her complaint pursuant to 28 U.S.C. §§1915(e)(2), §1915A is required.[5]

### III. **Legal Standards: Initial Review**

28 U.S.C. § 1915 provides that, when a plaintiff seeks to proceed IFP, "the court shall dismiss the case at any time if the court determines that . . . the action or appeal (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).  "Thus, it is a court's responsibility to determine that a plaintiff may properly maintain his complaint before permitting him to proceed further with his action."  *Praileau v. Fischer*, 930 F. Supp. 2d 383, 394 (N.D.N.Y. 2013).  A court's initial screening of a complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(a) does not preclude a later dismissal pursuant to Rule 12(b)(6)."  *Tisdale v. Hartley*, 442 F. Supp. 3d 569, 572-73 (W.D.N.Y. 2020).

---

[2] This motion is pending before District Court Judge Anne Nardacci.

[3] Plaintiff also filed a document entitled, "Chronological Statement of Facts and Exhibits Regarding the Estate of Michael Orsell and Related Property Irregularities."  Dkt. No. 9.  On the envelope of this filing, it is written "Filing in Support of all Current Cases."  Dkt. No. 9-16.  This filing is not related to the claims plaintiff raises in her complaint.  It is unclear what relief, if any, plaintiff seeks through this filing.  *See* Dkt. No. 9.  Plaintiff also submitted a letter regarding a USB filing that appears to relate to other actions she has in this District as well as allegations that appear to relate to her claim of mail fraud in this action.  *See* Dkt. No. 8.

[4]  Plaintiff is advised that, despite being granted in forma pauperis status for this action, all plaintiffs who are granted such status are still fully responsible for any costs and fees they incur in association with their cases, including, but not limited to, copying fees, witness fees, and transcription fees.

[5] Despite the statutory language referring to incarcerated individuals, these requirements apply equally to non-prisoner pro se litigants seeking to proceed in forma pauperis.  *See* N.D.N.Y. L.R. 72.3(d) ("Unless the Court orders otherwise, any civil action that a non-prisoner pro se litigant commences shall be referred to a Magistrate Judge for the purpose of review under 28 U.S.C. § 1915(e)(2) and 28 U.S.C. § 1915A when an application to proceed in forma pauperis is filed.").

Where, as here, the plaintiff proceeds pro se, "the court must construe his submissions liberally and interpret them to raise the strongest arguments that they suggest." *Kirkland v. Cablevision Sys.*, 760 F.3d 223, 224 (2d Cir. 2014) (per curiam) (internal quotation marks and citation omitted). As the Second Circuit stated,

> our cases have also indicated that we cannot read into pro se submissions claims that are not consistent with the pro se litigant's allegations, or arguments that the submissions themselves do not suggest, that we should not excuse frivolous or vexatious filings by pro se litigants, and that pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law. . . .

*Triestman v. Fed. Bureau of Prisons,* 470 F.3d 471, 477 (2d Cir. 2006) (internal quotation marks, citations, and footnote omitted*); see also Sealed Plaintiff v. Sealed Defendant,* 537 F.3d 185, 191 (2d Cir. 2008). Although detailed allegations are not required at the pleading stage, the complaint must still include enough facts to provide the defendants with notice of the claims against them and the grounds upon which these claims are based. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007) ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.").

Further, "pro se pleadings still must comply with . . . the Federal Rules of Civil Procedure."[6] *Kastner v. Tri State Eye*, No. 19-CV-10668 (CM), 2019 WL 6841952, at *2 (S.D.N.Y. Dec. 13, 2019) (quoting *Ruotolo v. IRS*, 28 F.3d 6, 8 (2d Cir. 1994));[7] *see also* FED. R. CIV. P. 8(a)(2) (providing that a pleading shall contain "a short and plain statement

---

[6] Hereinafter, "Fed. R. Civ. P."

[7] All unpublished cases cited in this Report-Recommendation and Order, unless otherwise noted, have been provided to plaintiff. *See Lebron v. Sanders*, 557 F.3d 76 (2d Cir. 2009) (per curiam).

of the claim showing that the pleader is entitled to relief," "a short and plain statement of the grounds for the court's jurisdiction . . .  and . . . a demand for the relief sought . . . ."). A complaint that fails to comply with the pleading requirements "presents far too a heavy burden in terms of defendants' duty to shape a comprehensive defense and provides no meaningful basis for the Court to assess the sufficiency of their claims." *Gonzales v. Wing*, 167 F.R.D. 352, 355 (N.D.N.Y. 1996).  As the Second Circuit has held, "[w]hen a complaint does not comply with the requirement that it be short and plain, the court has the power, on its own initiative . . . to dismiss the complaint." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988) (citations omitted).  However, "[d]ismissal . . . is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.* (citations omitted).

## IV. **Section 1915 Review**

### A. **Complaint**

Plaintiff brings this action under 42 U.S.C. 1983 for purported violations of her First, Fourth, Sixth, Eighth, And Fourteenth Amendment rights.  *See generally* Compl. She provides that she seeks to sue Johnathon Spychalski, Detective, Gloversville Police Department; Lucas Nellis, Lieutenant, Gloversville Police Department; James P. Riley, Esq., District Attorney, Fulton County District Attorney's Office; the Honorable Traci Dimezza, Gloversville City Court Judge; Kyle L. Davis, Public Defender; James P. Melita, Private Defense Counsel; Jason Mitchell Abdalla, Confidential Informant; Keith Ackerknecht, Jail Captain, Fulton County Jail; and "Unknown Individuals who Interfered with Plaintiff's Legal Mail and Communications."  Compl. at 1.

## 1. Official Capacity Claims

As a threshold issue, to the extent plaintiff names District Attorney Riley in his official capacity for monetary damages, all such claims are barred by Eleventh Amendment immunity. "Sovereign immunity bars not only suits against states themselves, but also suits for damages against state officials acting in their official capacities." *Chapman v. City of Albany*, No. 1:23-CV-686 (LEK/PJE), 2025 WL 295011, at *5 (N.D.N.Y. Jan. 24, 2025) (citing *Kentucky v. Graham*, 473 U.S. 159, 169 (1985)); *see also Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010) (summary order) ("It is well-established that New York has not consented to § 1983 lawsuits in federal court[.]"); *Darcy v. Lippman*, 356 F. App'x 434, 436-37 (2d Cir. 2009) (summary order) ("The Eleventh Amendment likewise bars [the plaintiff] from pursuing a claim for damages against the individual defendants in their official capacities"). Accordingly, to the extent plaintiff seeks to proceed against Riley in his official capacity for monetary damages for constitutional violations under section 1983, such claims must be dismissed without prejudice and without leave to amend pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii).

## 2. *Heck v. Humphrey*[8]

Plaintiff provides in her complaint that she has pleaded guilty to criminal charges. Compl. at 17, 20 (seeking an "injunction to vacate her plea agreement"), 21 (referring to "coercion of Plaintiff's plea'"). The undersigned discusses, *infra*, plaintiff's various claims that appear barred by *Heck v. Humphry*.

---

[8] As discussed *infra*, to the extent plaintiff seeks this Court to review, modify, or vacate her criminal plea/conviction, pursuant to a section 1983 action, such relief is also barred by *Rooker-Feldman*. *See infra* at 26-27.

a. **Fourth Amendment**[9]

Plaintiff indicates that she seeks to proceed pursuant to the Fourth Amendment for "unlawful arrest and fabricated evidence" and indicates that she was improperly prosecuted "despite the DA acknowledging her innocence," arguably raising claims for false arrest and malicious prosecution.  Compl. at 17-18.

"The Fourth Amendment provides the source for Section 1983 claims related to a plaintiff's arrest, detention and prosecution."  *Mitchell v. Kindlon*, No. 9:25-CV-0602 (MAD/TWD), 2025 WL 1951849, at *5 (N.D.N.Y. July 16, 2025), *reconsideration denied sub nom. Mitchell v. Blain-Lewis*, No. 9:25-CV-0602 (MAD/TWD), 2025 WL 3136383 (N.D.N.Y. Nov. 10, 2025).  Plaintiff contends that defendant Spychalski and Nellis "unlawfully arrested Plaintiff without probable cause, fabricating witness statements and suppressing evidence in violation of *Brady v. Maryland*, 373 U.S. 83 (1963)."  Compl. at 4.  Specifically, plaintiff contends that defendants violated her Fourth Amendment rights by arresting her for Kidnapping in the Second Degree and Assault in the Second Degree, without probable cause and based on fabricated evidence.  *See id.* at 5. Plaintiff contends that the "sole witness[10] against Plaintiff was under the influence of drugs at the time and provided contradictory statements, which were altered by Detective Spychalski."  *Id.* at 5.  To wit, plaintiff contends that Spychalski "engaged in fabricating evidence, coercing a witness, and manipulating investigative procedures to

---

[9]  To the extent plaintiff may also be alleging that the alleged false arrest, false imprisonment, and malicious prosecution also violates her right to due process, "[w]here a due process claim is 'based on the same conduct that gave rise to [a] plaintiff's . . . false arrest and malicious prosecution claims,' the due process claim should be dismissed 'as  both duplicative and merit[]less." *Crespo v. Rivera*, No. 16 CIV. 708 (PGG), 2018 WL 4500868, at *14 (S.D.N.Y. Sept. 19, 2018) (quoting *Osuna v. City of New York*, 8 Civ. 4759 (JSR), 2009 WL 2356424, at *6 (S.D.N.Y. July 30, 2009)); *see* Compl. at 7.
[10]  Plaintiff later contends that the victim was under the influence of drugs and provided contradictory statements.  It is unclear if the victim is the sole witness or if she is referring to the confidential informant.

support plaintiff's unlawful arrest" insofar as he tampered with a witness statement by "placing a diagonal line across the Miranda waiver and coercing the witness to 'just sign here.'" *Id.* at 3, 5, 14.   Plaintiff further contends that the "911 call from the alleged incident was withheld by the prosecution" in violation of *Brady*. *Id.* at 5, 14.  She asserts that the City of Gloversville is liable for the officers' alleged misconduct pursuant to *Monell v. Department of Social Services*, 436 U.S. 658 (1978), because "its policies, customs, and failure to train officers directly contributed to Plaintiff's unlawful arrest, detention, and prosecution."  Compl. at 4-5.

Plaintiff contends that District Attorney Riley prosecuted plaintiff despite being aware that there was an absence of probable cause, relied on contradictory witness statements, and he improperly withheld exculpatory evidence.  Compl. at 3 7.

### b. Ineffective Assistance of Counsel

Plaintiff raises a variety of concerns about her representation by Davis,[11] who was assigned as plaintiff's public defender, and Melita, who she had retained as private counsel.  She raises concerns relating to bail, being coerced by counsel to accept a plea for misdemeanor probation," not obtaining or challenging a lack of a preliminary hearing, being discouraged to withdraw a guilty plea, and being given incorrect advice about a habeas corpus petition.   Compl. at 7-8, 10-12.  Plaintiff contends their representation amounts to ineffective assistance of counsel in violation of her Sixth Amendment right.

### c. Equal Protection/Selective Prosecution

---

[11]  Plaintiff contends Judge DiMezza "reassigned" Davis as plaintiff's attorney after Davis had previously given plaintiff ineffective assistance of counsel. Compl. at 11.

Plaintiff contends that her codefendant, Jason Mitchel Abdalla, was responsible for the incident leading to her arrest "and he was rumored to have not been jailed." Compl. at 8.  She contends the Gloversville Police Department was aware that Abdalla committed a serious violent crime but was still recruited to be a confidential informant, and had "the two violent felonies he shared with Plaintiff entirely dismissed as well as two other serious non related drug felonies and two A misdemeanors." *Id.* at 9.  It appears plaintiff seeks to bring this claim against Spychalski, the City of Gloversville, Nellis, and District Attorney Riley.

Liberally read, plaintiff contends that her Fourteenth Amendment Due Process rights were violated because Abdalla's charges "were quietly dismissed, including charges he shared with Plaintiff," whereas she was still charged and prosecuted. Compl. at 16.  She contends her that attorney Melita told her "that the DA acknowledged her innocence but still wanted to charge her with something." *Id.*  It appears plaintiff is raising selective prosecution claims.

### d. *Brady* violation

Plaintiff contends that District Attorney Riley wrongly withheld exculpatory evidence – "the 911 call from the alleged incident" – in violation of *Brady v. Maryland*. Compl. at 5.

### e. Discussion

Plaintiff's claims (1) false arrest, false imprisonment, and malicious prosecution,[12] in violation of the Fourth Amendment; (2) ineffective assistance of counsel in violation of the Sixth Amendment; (3) denial of Equal Protection through selective

---

[12] The false arrest claim encompasses plaintiff's allegations regarding fabrication of evidence.

enforcement/prosecution in violation of the Fourteenth Amendment; (4) *Brady* violations; and (5) Fourteenth Amendment due process violations are barred by *Heck*.  *See generally* Compl.  Plaintiff's complaint provides that she has pleaded guilty to a crime and offers no indication that her plea/conviction has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

Clearly, were plaintiff to succeed on her claims of false arrest, false imprisonment, and/or malicious prosecution before this Court, such a finding would necessarily invalidate her criminal conviction, and, thus, are barred by *Heck* until she can demonstrate favorable termination of the conviction.  *See Perry v. City of Albany*, No. 8:20-CV-165 (GTS/DJS), 2020 WL 3405636, at *4 (N.D.N.Y. May 6, 2020) *report and recommendation adopted*, 2020 WL 3403080 (N.D.N.Y. June 19, 2020) ("Claims of false arrest, false imprisonment, malicious prosecution, and fabrication of evidence are generally viewed as barred by the rule in *Heck*."); *Harris v. Buffardi*, No. 1:08-CV-1322 (GLS/DRH), 2011 WL 3794235, at *10 (N.D.N.Y. Aug. 24, 2011) (holding the plaintiff's claims for "violation of his due process rights, fabrication of evidence, obstruction of justice, bad faith inadequate investigation, and §§ 1983 and 1985 conspiracy—all of which are patent attacks on the validity of [the plaintiff's] conviction—[were] barred" by *Heck*).

Next, insofar as plaintiff contends that her representation by Davis and Melia violated her Sixth Amendment right to counsel, these claims are also barred by *Heck v. Humphrey*.  As noted, plaintiff contends that she pleaded guilty to a crime and has not

9

shown that such conviction has been terminated in her favor.  As a ruling in this case that she was denied effective assistance of counsel would necessarily imply that the conviction was unlawfully obtained, it is barred by *Heck v. Humphrey*.  *See D.S. v. City of New York*, 736 F. App'x 284, 287 (2d Cir. 2018) (summary order) ("[A]sserting that D.S. was . . . denied effective counsel in violation of constitutional rights advanced under § 1983 necessarily implies that his assault conviction was unlawfully obtained."). Accordingly, it is recommended that plaintiff's Sixth Amendment claims with respect to her various concerns regarding Davis and Melita's representation be dismissed without prejudice and without leave to amend.[13]

Similarly, "[p]laintiff's selective prosecution claim here, if meritorious, would necessarily mean that [her] conviction was unlawful." *Corley v. Vance*, 365 F. Supp. 3d 407, 457 (S.D.N.Y. 2019), *aff'd sub nom. Corley v. Wittner*, 811 F. App'x 62 (2d Cir. 2020) (summary order); *Ruotolo v. Town of New Paltz*, No. 1:22-CV-0169 (LEK/DJS), 2023 WL 2500655, at *18 (N.D.N.Y. Mar. 14, 2023) ("To the extent Plaintiff has stated a claim for selective prosecution pursuant to the Equal Protection Clause . . .  the Court

---

[13] Arguably, plaintiff is contending that defendant Davis and Melita's representation of her violated her right Fourteenth Amendment to procedural due process.  To the extent that plaintiff seeks to bring any other claims against Davis or Melita for violations of her constitutional rights, criminal defense attorneys – whether assigned or retained – are not considered state actors for purposes of section 1983.  *See Rodriguez v. Weprin*, 116 F.3d 62, 65-66 (2d Cir. 1997) ("[I]t is well-established that court-appointed attorneys performing a lawyer's traditional functions as counsel to defendant do not act 'under color of state law' and therefore are not subject to suit under 42 U.S.C. § 1983."); *Pittman v. Brosi*, No. 22-CV-01757, 2022 WL 2161401, at *3 (E.D.N.Y. June 15, 2022) (dismissing Section 1983 claims against "court-appointed defense attorney in the underlying state court criminal proceedings [because] she is a private party who does not act under color of state law"); *see also Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (holding that a "public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding").  Accordingly, to the extent plaintiff contends that Davis and Melita's representation violated her Fourteenth Amendment rights, it is recommended that such claims be dismissed with prejudice and without leave to amend for failure to state a claim.

finds that *Heck* bars that claim.") (internal citations omitted).  Thus, this claim is further barred by *Heck*.

Finally, were plaintiff to be successful on a claim that Riley wrongfully withheld exculpatory evidence, it would necessarily invalidate a criminal conviction.[14]  *See Amaker v. Weiner*, 179 F.3d 48, 51 (2d Cir. 1999).[15]  Thus, it is recommended that plaintiff's *Brady* claim be dismissed as barred by *Heck*. *See Johnson v. New York City Police Dep't*, 651 F. App'x 58, 60 (2d Cir. 2016) (summary order) ("'Brady-based § 1983 claims necessarily imply the invalidity of a challenged conviction in the trial (or plea) in which the Brady violation occurred' because 'the remedy for a Brady violation is vacatur of the judgment of conviction and a new trial.' Thus, a Brady claim is not cognizable under § 1983 unless the challenged conviction has been invalidated.") (quoting *Poventud v. City of New York*, 750 F.3d 121, 132-33 (2d Cir. 2014) (en banc)).

Accordingly, it is recommended that plaintiff's Fourth Amendment false arrest, false imprisonment, and malicious prosecution claims; Sixth Amendment ineffective assistance of counsel claims; Fourteenth Amendment equal protection/selective prosecution claims, and claims arising out of alleged *Brady* violations be dismissed without prejudice and without leave to amend in this action pursuant to *Heck* as plaintiff's complaint provides that she pleaded guilty to a crime and has not alleged that

---

[14]   The undersigned notes that even if there were no *Heck* concern, District Attorney Riley would be protected by absolute prosecutorial immunity, as is discussed below regarding a separate claim.  "*Kweller v. Cnty. of Broome*, No. 3:25-CV-343 (AJB/ML), 2025 WL 3280821, at *12 (N.D.N.Y. Nov. 25, 2025) (quoting *Hill v. City of New York*, 45 F.3d 653, 653 (1995) ("[A] prosecutor is protected by absolute immunity for withholding exculpatory evidence from a grand jury.").

[15] *Heck* bars claims for injunctive and declaratory relief as well as monetary relief.  *See, e.g.*, *Loyd v. Cuomo*, 8:14-CV-829 (GLS/CFH), 2015 W L 3637409, at *2 (N.D.N.Y. June 10, 2015) ("[T]he Supreme Court has explained that the *Heck* rule applies 'no matter the relief sought (damages or equitable relief).'") (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 82 (2005) and citing *Caswell v. Green*, 424 F. App'x 44, 45 (2d Cir. 2011) (summary order)).

she ever obtained an invalidation of her state-court conviction.  *See Clemmons v. Albany Cnty. Dist. Attorney's Off.,* No. 1:16-CV-884 (TJM/CFH), 2016 WL 5793201, at *3 (N.D.N.Y. Aug. 25, 2016), *report and recommendation adopted sub nom. Clemmons v. Albany Cnty. Dist. Attorney's Off.*, No. 1:16-CV-884 (TJM/CFH), 2016 WL 5717265 (N.D.N.Y. Sept. 29, 2016) (citing *Amaker v. Weiner*, 179 F.3d 48, 52 (2d Cir. 1999) ("Although the undersigned does not recommend that plaintiff be given an opportunity to amend his complaint in connection with this proceeding, it is recommended that the dismissal be without prejudice[.]").

### 3. **Judge DiMezza: Judicial Immunity**

Plaintiff next contends that Judge DiMezza violated her "Eighth[16] Amendment rights by imposing excessive bail $50,000 cash/$75,000 partially secured bond/$100,000 fully secured bond" despite plaintiff's lack of criminal history for the past decade, her "permanent disability status," and "[t]he reduction of two serious felony charges to a misdemeanor[]."  Compl. at 6, *see also id.* at 3.  Plaintiff contends that after thirty two days, bail was lowered to a $50,000 partially-secured bond, which plaintiff contends "was still excessive."  *Id.* at 7.  Plaintiff argues that the bail was "arbitrarily maintained and excessive levels," causing her family financial hardship.  *Id.*

Plaintiff also contends that Judge DiMezza subjected her to unlawful pretrial detention in violation of her Fourteenth Amendment due process rights in that she was detained for over 180 days without a preliminary hearing and did not waive her right to such a hearing.  *See* Compl. at 6.  Plaintiff asserts that this amounts to "unlawful

---

[16]  As plaintiff appears to have been a pretrial detainee at the time of her incarceration, not a convicted and sentenced prisoner at this time, her claims would not fall under the Eighth Amendment.

detention" in violation of her due process rights.  *See id.*[17]  Plaintiff contends that at a May 5, 2024, bail review hearing, Judge DiMezza "privately conferred with the District Attorney off the record, then denied bail reduction[,]" alleging that the judge "participated in coercive plea negotiations[,]" in violation of her due process rights.  *Id*. at 3.

Reading the complaint liberally and applying due solicitude, plaintiff contends that DiMezza set excessive bail and that it violated her Eighth and Fourteenth Amendment rights and her detention without a pretrial hearing violated her Fourteenth Amendment due process rights.[18]  Plaintiff has not set forth any facts to reasonably suggest that DiMezza acted beyond her judicial capacity or in complete absence of all jurisdiction in setting bail. *See Franklin v. Warren Cty. D.A.'s Office*, No. 1:08-CV-801 (GLS/RFT), 2009 WL 161314, at *5 (N.D.N.Y. Jan. 21, 2009) (absolute judicial immunity barred excessive bail claim against judge because "[j]udges enjoy absolute immunity from personal liability for acts committed within their judicial jurisdiction") (citing *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994))); *see also London v. Nassau Cnty. Dist. Attorney's Off.*, No. 20-CV-3988(JS)(AKT), 2020 WL 7699644, at *5 (E.D.N.Y. Dec. 28, 2020) ("Moreover, Plaintiff's excessive bail claims are also barred by absolute judicial immunity because the setting of bail is a judicial function that is entitled to absolute

---

[17] Plaintiff also appears to argue that, insofar as she was prosecuted based on allegedly fabricated evidence, she was deprived of her due process rights under the Fourteenth Amendment. However, such argument appears to be encompassed within her false arrest claim (she contends she was falsely arrested, in part, due to fabricated evidence), which would fall under the Fourth Amendment.

[18]  To the extent plaintiff's complaint may be read as contending that the initial denial of bail violated her Eighth Amendment rights, courts have rejected this claim.  *See Carlson v. Landon*, 342 U.S. 524, 545-46 (1952) ("[The Excessive Bail Clause] has never been thought to accord a right to bail in all cases, but merely to provide that bail shall not be excessive in those cases where it is proper to grant bail."). Further, at least one court in this Circuit has held that where a plaintiff alleged excessive bond but was able to "eventually post the bond and secure his release," as the bond did not prevent the release from detention, there could not be a violation of Eighth Amendment rights established. *See Hassan v. Holder*, No. 11 CIV. 7157 LGS, 2014 WL 1492479, at *12 (S.D.N.Y. Apr. 15, 2014).

immunity.").  Since absolute judicial immunity is "not overcome by allegations of bad

faith or malice," *Mireles v. Waco*, 502 U.S. 9, 11 (1991), plaintiff's § 1983 claims against

DiMezza, including her conclusory[19] allegations that DiMezza "participated" in coercing

plaintiff's plea, must fail.[20]

Plaintiff next contends that DiMezza subjected her to "unlawful pretrial detention"

in that she was incarcerated "for over 180 days without a preliminary hearing"[21] or

waiving such hearing, which violated her Fourteenth Amendment due process rights.

*See* Compl. at 6, 8.  She contends that NYS CPL § 180.80 required her to be released

on her own recognizance after the 144 hours legally allowed by NYS CPL 180.80."  *Id.*

at 8.  Plaintiff's claim would be similarly barred by absolute judicial immunity.  *See Mills*

*v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of

absolute judicial immunity is 'frivolous' for purposes of [the IFP statute].").[22]

---

[19] The undersigned observes that the only discernable statement plaintiff makes in the complaint to support this allegation is that DiMezza asked plaintiff "why she wanted to withdraw her plea" and told her "that she should be thankful she was offered a great plea since the original charges were a class B and D felony."  Compl. at 11.

[20] Further, even assuming, arguendo, that judicial immunity were not a bar, if this Court were to conclude that DiMezza coerced her into taking a plea, it would necessarily invalidate her criminal conviction and, therefore, is barred by *Heck* absent favorable termination of the criminal conviction.  Similarly, Insofar as plaintiff is alleging that DiMezza participated in a violation of her Sixth Amendment rights by assigning plaintiff Davis as her public defender because Davis "previously provided ineffective assistance," as noted above, such an allegation arises under her claim that she received ineffective assistance of counsel and is barred by *Heck* unless and until plaintiff can show favorable termination of her criminal conviction. Compl. at 11.

[21] Plaintiff elsewhere states that after her initial arraignment, DiMezza set bail, "remanded her to Fulton County Jail for 32 days before being released on a lowered bail . . . ."  Compl. at 7.  These statements appear to conflict.

[22] Further, to the extent plaintiff may be seeking this Court to review Judge DiMezza's bail determinations, it seems likely that this claim is moot because "the Eighth Amendment protection against excessive bail may only be vindicated prior to trial."  *MacLean v. Lewin*, No. 10-CV-0306 MAT, 2011 WL 2971771, at *4 (W.D.N.Y. July 20, 2011) (citing *Murphy v. Hunt*, 455 U.S. 478, 481-482 (1982) (criminal defendant's 42 U.S.C. § 1983 suit challenging his bail as excessive was moot after he was convicted in the underlying criminal case); then citing *United States v. Bostick*, 400 F.2d 449, 451 (5th Cir.1982) ("The question whether the bail set before trial was excessive became moot after the judgment of conviction was rendered."), *cert. denied*, 393 U.S. 1068 (1969), then citing *Lombard v. Mazzuca*, No. 00-CV-74622 (JG), 2003 WL 22900918, at *6 (E.D.N.Y. Dec.8, 2003) (holding habeas claim that pretrial bail was excessive became moot once petitioner was convicted).

4. **James P. Riley, Esq.: Absolute Immunity**

To the extent a liberal reading of the complaint suggests that District Attorney James P. Riley[23] violated her Fourteenth Amendment due process rights by (1) failing to challenge/address the alleged violation of CPL § 180.80, such claim would be barred by absolute prosecutorial immunity.[24]   *See Bey v. Nugent*, No. 18CIV7878 PGGRWL, 2020 WL 6530917, at *5 (S.D.N.Y. June 3, 2020), *report and recommendation adopted*, No. 18CIV7878 PGG RWL, 2020 WL 4731419 (S.D.N.Y. Aug. 14, 2020) ("Absolute immunity covers virtually all acts associated with a prosecutor's function as an advocate regardless of motivation, *Bernard v. County of Suffolk*, 356 F.3d 495, 504-505 (2d Cir. 2004), including, for example, deciding whether to bring charges, making bail applications, presenting charges to a grand jury, presenting evidence at a suppression hearing, and engaging in plea negotiations.") (citing *Giraldo v. Kessler*, 694 F.3d 161, 165, 167 (2d Cir. 2012), then citing *Hill v. City of New York*, 45 F.3d 653, 661 (2d Cir. 1995)).[25]   Accordingly, it is recommended that any Fourteenth Amendment claims against Riley in his individual capacity be dismissed with prejudice for failure to state a claim.

5. **Criminal Investigation/Criminal Prosecution**

i. **Claims against Abdalla**

---

[23]   Plaintiff refers to James Riley as the Fulton County District Attorney, but it appears he may be an Assistant District Attorney.
[24]   The undersigned further concludes that the other claims plaintiff raises against Riley, pursuant to the Fourth and Fourteenth Amendments and *Brady*, addressed in the *Heck* section, are also barred by prosecutorial immunity.
[25]   As noted, *supra*, claims against him in his official capacity for money damages are barred by sovereign immunity.  *See D'Alessandro v. City of New York*, 713 F. App'x 1, 8 (2d Cir. 2017) (summary order) ("[I]f a district attorney or an assistant district attorney acts as a prosecutor, she is an agent of the State, and therefore immune from suit in her official capacity").

Plaintiff contends that upon returning to her home after being released on bail, it was completely ransacked, and her SSI check was missing. *See* Compl. at 8. She learned "her co-defendant," presumably Abdalla, had her cellular phone and had been stealing money from her "account" before her arrest. *See id.* Plaintiff also contends that Abdalla "committed sexual misconduct and entrapment, extorting plaintiff for money," and "engag[ing] in sexual misconduct under false pretenses." Compl. at 4, 15. Plaintiff contends that he "used lies and rumors to cause a breakup between her and her fiancée of six years." *Id.* at 9. Plaintiff contends that she was placed at risk of STI and HIV exposure based on Abdalla falsely advising her he had been tested. *See id.* at 9. She further contends Abdalla "attempt[ed] to frame her for mail order drugs." *Id.* Plaintiff contends Abdalla is guilty of entrapment and "engaging in sexual intercourse with plaintiff under false pretenses, constituting rape by deception, while working as a confidential informant." *Id.* at 15. Plaintiff also contends that Abdalla stole money from her, improperly had possession of her cellular phone, potentially "ransacked" her apartment and stole an SSI check "from her account." *Id.* at 8. She claims he "extorted" her for money. *Id.* at 15.

Plaintiff's claims against and involving Abdalla must be dismissed. To the extent plaintiff seeks this Court to pursue or order an investigation or initiate criminal charges against Abdalla, it is well-settled law that there exists no private initiation of criminal prosecution or arrest. *See Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981); *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973) ("[A] private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another."). To the extent plaintiff seeks this Court to direct prosecuting agencies to initiate a criminal investigation or

proceeding, this is relief the Court also cannot provide.  *See Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972).

Further, to the extent plaintiff refers to entrapment, there is no private cause of action of entrapment in a civil case.  *See U.S. v. Sistrunk*, 622 F.3d 1328, 1332 (11th Cir. 2010) (recognizing entrapment as an affirmative defense in criminal cases).  Instead, entrapment is an affirmative defense in a criminal case.  *See id.*

Plaintiff states that Abdalla "extorted her for money, falsely claiming he was in jail.  Plaintiff sent money to the jail, but it was never accounted for."  Compl. at 15.  In addition to lacking standing to seek an investigation or prosecution into her allegations of extortion, "[in New York,] extortion is a criminal offense, and may not be plead as a separate cause of action in a civil case." *Naples v. Stefanelli*, 972 F.Supp.2d 373, 401 (E.D.N.Y. 2013) (citations omitted)); *Mathon v. Feldstein*, 303 F.Supp. 2d 317, 325 (E.D.N.Y. 2004) ("[E]xtortion is a federal crime and there is no federal statute creating a private civil cause of action for extortion.") (alterations and quotation marks omitted).

Accordingly, it is recommended that plaintiff's claims for "sexual misconduct and entrapment by Jason Mitchell Abdalla" and extortion be dismissed without prejudice and without opportunity to amend for lack of subject matter jurisdiction.[26]

### ii. Mail Interference/Forgery: First and Fourteenth Amendments

---

[26]  Similarly, to the extent a liberal reading of the complaint might suggest that plaintiff seeks to proceed against law enforcement or prosecutors for any failure to act to prosecute Abdalla for these alleged crimes, plaintiff would lack standing to make such a claim.  *See Cohen v. Richardson*, No. 1:23-CV-00224 (AMN/CFH), 2024 WL 418788, at *4 (N.D.N.Y. Feb. 5, 2024), *reconsideration denied*, No. 1:23-CV-00224 (AMN/CFH), 2024 WL 3653801 (N.D.N.Y. Aug. 5, 2024*), appeal dismissed sub nom. Cohen v. Cushman*, No. 24-2248, 2025 WL 2485120 (2d Cir. Aug. 18, 2025) (citing *Linda R.S.*, 410 U.S. at 619) ("a citizen lacks standing to contest the policies of the prosecuting authority when he himself is neither prosecuted nor threatened with prosecution.").

Plaintiff seeks to proceed against unknown defendants[27] for alleged violations of her First and Fourteenth Amendment rights in connection with her allegations that unknown individuals are interfering with her mail, submitting forged judicial documents, and obstructing her ability to file legal documents. *See* Compl. at 4, 12-13. Plaintiff contends that unknown defendant(s) rerouted her mail in connection with her habeas corpus petition, among other unspecified "critical legal filings," to unknown locations or falsely marked the mail as delivered, "despite no court records showing receipt." *Id.* at 13. Plaintiff contends she "later received a fake court-stamped response with a forged judicial signature, falsely suggesting that her habeas petition had been processed and denied when, in reality, it never reached the court." *Id.* at 13. Plaintiff says PACER falsely shows her filings as "processed" but "USPS tracking numbers attached to these slips show no record of mailing activity." *Id.* Plaintiff contends that the unknown defendant or defendants forged and interfered with her mail in a "deliberate effort to intercept Plaintiff's court filings." *Id.* Plaintiff contends that such conduct – "theft, tampering, and forgery of legal documents" – amounts to violations of her "First Amendment right to petition the government for redress of grievances and Fourteenth Amendment right to due process." *Id.* at 14. Plaintiff contends that the unknown

---

[27] Plaintiff appears to elaborate on this claim in docket number 8, indicating her belief that the actors are family members. In addition to the failings associated with this claim and noted within this Report-Recommendation & Order, plaintiff may also not proceed under section 1983 as her family members are not alleged to be state actors under the color of state law. Further, such claim also appears to be frivolous. Plaintiff's claims appear to involve the interference with her electronic mail and/or legal mail and forged judicial signatures in association with a habeas corpus case. The Court's dockets reflect that she filed two habeas corpus cases in this District, one was administratively closed because plaintiff failed to pay the filing fee and the other is currently open and pending. *See* 9:25-cv-01455-AJB, *Orsell v. Emery* (closed 10/23/25); 9:24-cv-01389-LEK, *Orsell v. Spychalski et al.* (pending). The undersigned does not rely on these defects in recommending dismissal of this claim but includes this footnote for sake of completeness.

defendants conduct also amounts to "criminal fraud and obstruction of justice under 18 U.S.C. 241 and § 242." *Id.*

Plaintiff seeks this Court to enter an injunction to order unknown individuals to stop "[t]ampering with Plaintiff's legal mail, communications, or court filings[,]" "[c]yber attacks against Plaintiff's devices, legal files, and communications," "tampering with Plaintiff's phone, internet, and SIM card data[,]" ""[i]nterference with Plaintiff's USPS mail, including legal filings." Compl. at 20. She requests an order "directing an independent federal investigation" into "the fraudulent documents and forged judicial signatures in Plaintiff's habeas corpus filing." *Id.*

As noted above, plaintiff does not have standing to seek the investigation or criminal prosecution of defendants, nor can this Court direct any agency to perform an investigation, bring criminal charges, or enjoin unknown actors. *See Leeke*, 454 U.S. at 86-87; *Linda R.S. v*, 410 U.S. at 619. Accordingly, insofar as plaintiff seeks to proceed against unknown (Doe) defendants for violations of her First and Fourteenth Amendment rights in connection with mail tampering, mail interference, or forgery of documents, such claims are dismissed without prejudice and without opportunity to amend for lack of subject matter jurisdiction.

### 6. **Conditions of Confinement**[28]

### a. **Deliberate Indifference to Serious Medical Needs**

---

[28] Liberally read, in referring to having limited access to a law library resources – insufficient number of tablets and time limits on the tablets – it is possible plaintiff is contending that she was denied access to the courts as she was not aware of her rights under CPL 180.80, plaintiff has not demonstrated "that the alleged shortcomings in the library . . . hindered [her] efforts to pursue a legal claim" or that those alleged shortcomings caused her actual injury." *Johnson v. Nassau Cnty.*, No. 13-CV-6510 JS WDW, 2014 WL 294250, at *6 (E.D.N.Y. Jan. 24, 2014) ("Here, as is readily apparent, Plaintiff has made no allegations regarding an actual injury he suffered due to the allegedly inadequate law library or insufficient access to the law library at the N.C.D.C."). Plaintiff has also not named any defendants in association with her complaints about legal access.

Plaintiff contends that Capital Keith Achrenight[29] violated her Eighth Amendment right against cruel and unusual punishment insofar as he was deliberately indifferent to her serious medical needs.  *See* Compl. at 15.  Although the exact timeline of her incarceration is not entirely clear,[30] it appears plaintiff was a pretrial detainee during this incarceration, not a convicted prisoner; thus, her deliberate indifference claims proceed pursuant to the Fourteenth Amendment.  *See Bradley v. Rell*, 703 F. Supp. 2d 109, 117 (N.D.N.Y. 2010) ("Where a pre-trial detainee alleges deliberate indifference to a medical need while incarcerated, such a claim is evaluated under the Due Process Clause of the Fourteenth Amendment.") (citation and additional internal quotation marks omitted).[31]

Plaintiff contends that during a sixteen-day stay in jail,[32] she was denied mental and physical health medications, causing her to suffer withdrawal and physical and psychological distress.  *See* Compl. at 15-16.  She contends that Captain Achrenight was responsible for jail operations and ensuring she received medical care.  *See id.* She contends "jail staff deliberately withheld an immediate STD test," instead

---

[29]  Plaintiff spells this defendants name in a variety of ways.  In the caption, she spells it as Ackerknecht. Compl. at 1.  Throughout the complaint, it is spelled as Achrenight.  *See* Compl. at 4, 15.  For consistency, the undersigned uses the spelling Achrenight.

[30]  Plaintiff refers to a sixteen-day period of incarceration and elsewhere in her complaint a thirty-two-day period of incarceration.  *See* Compl.

[31]

> The objective prong of a Fourteenth Amendment deliberate indifference claim is the same as for a convicted prisoner under the Eighth Amendment. See Darnell, 849 F.3d at 30. In this regard, a plaintiff must demonstrate a violation sufficiently serious by objective terms, "in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists." *Hathaway v. Coughlin*, 99 F.3d 550, 553 (2d Cir. 1996).
> With respect to the subjective test, a detainee must allege defendants "acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the [plaintiff] even though [they] knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35.

*Taylor v. Tope*, No. 9:25-CV-0773 (ECC/PJE), 2025 WL 3194406, at *3 (N.D.N.Y. Aug. 12, 2025).

[32]  It is not entirely clear when this stay occurred or whether the failure-to-protect allegations occurred during the same period of incarceration as the medical indifference claims.

administering "a broad-spectrum antibiotic." *Id.* at 15.  Her STD test was administered after completion of antibiotics, "effectively destroying any evidence of STI transmission." *Id*.

Plaintiff names only Captain Achrenight in connection with her deliberate indifference to serious medical needs claim.   Personal involvement is a prerequisite to the assessment of damages in a section 1983 case, and respondeat superior is an inappropriate theory of liability. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir.1994) (citation omitted); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir.2003).  Plaintiff does not state how Achrenight would have been aware of plaintiff's medical needs, that she specifically informed him of her medication or testing requests or concerns, or that he was personally responsible for denying her request for STD testing.   Instead, plaintiff appears to be seeking to proceed against Achrenight for both her deliberate indifference and failure to protect claims based on his position as police Captain.  However, where "a defendant is a supervisory official, a mere 'linkage' to the unlawful conduct through "the prison chain of command" (i.e., under the doctrine of respondeat superior) is insufficient to show his or her personal involvement in that unlawful conduct.  *Bazile v. Uhler*, No. 9:25-CV-1602 (AMN/PJE), 2025 WL 3522973, at *3 (N.D.N.Y. Dec. 9, 2025) (citing *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981); *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003); *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996)).  Accordingly, plaintiff has failed to demonstrate a claim against Achrenight as she has not sufficiently alleged his personal involvement in any deliberate medical indifference to any serious medical need.[33]

---

[33]  The undersigned observes that plaintiff does not deny being given medical care, stating that she was given "broad-spectrum antibiotics used to treat gonorrhea and chlamydia."  Compl. at 15.

b. **Failure-to-Protect**

Plaintiff next contends that she was wrongly designated as a low-security inmate, "despite a long-standing high-security designation due to mental health conditions." Compl. at 16. Plaintiff contends that, apparently due to the wrong security designation, "jail staff allowed two inmates to enter Plaintiff's cell off camera and physically assault her." *Id.* She asserts that "[o]ne assailant was a male in transition who still had male genitalia." *Id.* She contends that her attackers "attempted to provoke Plaintiff into a physical altercation." *Id.* Plaintiff alleges that "[j]ail officials took no action against the attackers, creating an unreasonable risk of harm in violation of the Eighth Amendment." *Id.*

First, as with her deliberate indifference claim, because plaintiff was a pretrial detainee at the time of the incident in question, her failure-to-protect claim arises under the Fourteenth Amendment. *See Darnell*, 849 F.3d at 35; *see also Vega v. Semple*, 963 F.3d 259, 273-74 (2d Cir. 2020). Second, plaintiff does not identify the defendants against whom she seeks to bring this claim. She does not name the "jail staff," indicate that she wishes to proceed against Doe defendants, or identify each person's individual conduct. Compl. at 16. Further, to the extent plaintiff may have intended to proceed against Achrenight on her failure-to-protect claim, such claims would also fail as she has not established his personal involvement in the alleged failure to protect. She does not contend that Achrenight was responsible for designating her security level or that he was at all aware of the alleged attack, had the ability to intervene to prevent the attack, or that he was responsible for the disciplining of the alleged attackers.

22

Here, plaintiff can arguably amend to allege Achrenight's or other individuals' personal involvement in the alleged constitutional deliberate indifference to medical needs and failure-to-protect claims.[34]  Accordingly, it is recommended that plaintiff's Fourteenth Amendment conditions of confinement claims be dismissed without prejudice and with leave to amend as specified herein.

### 7. **State Law Defamation Claim**

Plaintiff also appears to attempt to raise a state law claim "for defamation, emotional distress, and reputational harm caused by the slanderous and false newspaper article and radio broadcast."[35] Compl. at 21.  Plaintiff contends that "on the front page of the local newspaper the day before Plaintiff's court appearance" there was a false allegation that plaintiff "stabbed the victim in the face and neck repeatedly" and such claims were "included in the police blotter section on a separate occasion."  *Id.* at 22.  Plaintiff contends that the reports did not have a disclaimer that she was innocent until proven guilty.  *See id.*  She alleges that she was subjected to "public ridicule, humiliation, and prejudice in her legal proceedings."  *Id.*  Plaintiff contends that these statements were "written by Gloversville Police Captain Bradley Schaffer."  *Id.* at 22.  She also contends that the publication "contaminated any potential jury pool, making it nearly impossible for Plaintiff to receive a fair trial."  *Id.*

"Under New York law, claims for defamation that are brought after one year from the date that the alleged defamatory statements were made are barred by the statute of

---

[34]  Although the undersigned observes that exhaustion is an affirmative defense, for sake of completeness, it is noted that it is unclear whether plaintiff exhausted her administrative remedies in any available facility grievance program.
[35] Plaintiff does not name the newspaper or radio stations through which the allegedly libelous or slanderous material was published or indicate whether she seeks to proceed against those entities.

limitations." *Waldron v. Milana*, No. 5:10-CV-0065 (GTS/DEP), 2013 WL 2445047, at *3 (N.D.N.Y. June 5, 2013) (citing N.Y. C.P.L.R. § 215(3)).  Plaintiff states that the information was published in the local newspaper on "the day before her court appearance."  Compl. at 22.  It is not clear whether plaintiff is referring to her first court appearance or a different one.  Indeed, it is not entirely clear when plaintiff even had her first court appearance.  Plaintiff notes that she was arrested on April 9, 2024.  *See id.* at 4.  Depending on when the allegedly defamatory statements were published, her defamation claim may be barred by the statute of limitations as she commenced this action on July 18, 2025.[36]  Plaintiff also does not allege when the allegedly defamatory radio broadcasts were released or when the "police blotter" section was published as this publication may also have occurred greater than one year prior to the commencement of this action.  *Id.* at 22.

Further, insofar as plaintiff wishes to proceed against a municipal defendant for a state tort claim, she must demonstrate she has filed a notice of claim within ninety days of the alleged violation.  *See* N.Y. Gen Mun. Law § 50-e.  Plaintiff has made no such claim.[37]  *See generally Silverman v. City of New York*, No. 98-CV-6277, 2001 WL 218943, at *7 (E.D.N.Y. Feb. 2, 2001) (applying notice of claim requirement to defamation claim against municipality).

In addition to the statute of limitation concerns and the notice of claim issue, the undersigned does not recommend that leave to amend be afforded because, even if

---

[36]   Indeed, if, in referring to "the day before Plaintiff's court appearance," plaintiff is referring to a date in April 2024, such a claim would be barred under the one-year statute of limitations.  Compl. at 22.
[37] Plaintiff indicates that her right to a fair trial has been impeded because such allegedly defamatory statements poisoned the potential jury pool.  However, it appears from the allegations in the complaint plaintiff accepted a plea, waiving her right to a jury trial.  Further, such alleged injury appears speculative.

plaintiff could, upon amending, demonstrate that neither of these concerns bars her

defamation claim, it is still recommended that the Court decline to exercise

supplemental jurisdiction.  Significantly,

> "[A] cause of action under 42 U.S.C. § 1983 may not be premised solely
> on a violation of state law.*" O'Neil v. Bebee*, No. 5:09-CV-1133
> (GTS/DEP), 2010 WL 502948, at *7 n.15 (N.D.N.Y. Feb. 10, 2010).
> However, a court may choose to exercise supplemental jurisdiction over
> pendent state law causes of action pursuant to 28 U.S.C. § 1367 where
> the state law causes of action "are so related to claims in the action within
> such original jurisdiction that they form part of the same case or
> controversy under Article III of the United States Constitution." *See* 28
> U.S.C. § 1367(a).

*Francis v. Depuy*, No. 9:25-CV-0016 (LEK/ML), 2025 WL 3672549, at *4 (N.D.N.Y. Dec.

18, 2025).  Here, the undersigned is recommending dismissal, without leave to amend,

of all of plaintiff's federal claims except those relating to the conditions of her

confinement.  Although the undersigned is recommending that plaintiff be permitted to

amend as to her condition of confinement claims, the conditions of confinement claims

are not so related to her state-law defamation claims such that they can be said to be of

the same case or controversy.   Accordingly, even if plaintiff could potentially amend to

demonstrate that the defamation claims are not barred by the one-year statute of

limitations, and that she either served a notice of claim upon the municipality or no such

service is required, it is recommended that decline to exercise supplemental jurisdiction

over her state-law defamation claim and dismiss the claim without leave to amend.

## 8. **Injunctive/Declaratory Relief**

Although the undersigned recommends dismissal of all of the claims associated

with the requests for injunctive relief, the undersigned also notes that the Court is likely

prohibited from granting much of this relief (1) due to *Rooker-Feldman*; (2) because the

Court cannot grant mandamus relief over a non-federal agency; and (3) because, as noted above, plaintiff does not have standing to seek this Court to initiate a criminal investigation or prosecution or for this Court to direct other agencies to so perform.

Plaintiff contends she seeks injunctive relief through (1) an order prohibiting "Defendants, law enforcement agencies, and any associated individuals from engaging in further harassment, intimidation, retaliation, or interference with plaintiff's constitutional rights, including but not limited to: unlawful surveillance, cyber attacks, and electronic tampering"; "Tampering with Plaintiff's legal mail, communications, or court filings" or "Attempts to entrap Plaintiff or interfere with her case using confidential informants."; (2) an order compelling "an immediate forensic audit and investigation" into alleged cyber attacks against plaintiff and her devices, tampering with her internet and electronics, and interference with her mail; (3) "an injunction vacating Plaintiff's plea agreement," "staying the enforcement of Plaintiff's probation pending the resolution of this case," "a declaratory judgment that Plaintiff's excessive bail was unconstitutional, along with an order directing reimbursement of all improperly imposed financial penalties and liens," and "an order enjoining further enforcement of plaintiff's unconstitutional sentence, including any continued supervision under probation."; (4) an order "directing an independent federal investigation into" (a) "[t]he fraudulent court documents and forged judicial signatures in Plaintiff's habeas corpus filing", and (b) "[t]he role of law enforcement in obstructing justice, including their use of confidential informants to entrap Plaintiff", (c) a "[r]eferral to the U.S. Postal Inspection Service and DOJ Civil Rights Division for criminal prosecution of those responsible";  (d)"[t]he involvement of Gloversville and Johnstown Police Departments in interfering with

Plaintiff's digital and personal privacy"; (e) "[m]isconduct by prosecutors, public defenders, and private defense attorneys, including coercion of Plaintiff's plea"; (5) "[a] court directive to suspend the confidential informant status of individuals involved in fabricating evidence, coercing testimony, and targeting Plaintiff"; and (6) an "injunction requiring the City of Gloversville to reform its police training and disciplinary procedures to prevent further constitutional violations  *Id.* at 21, 23.

Insofar as plaintiff seeks this Court to direct state and municipal agencies, such as the Fulton County District Attorney's Office or the Gloversville Police Department, to act or cease to act, this Court cannot do so.  "[T]he Mandamus Act provides that '[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel *an officer or employee of the United States or any agency thereof* to perform a duty owed to the plaintiff.'" *Walker v. Rosa*, No. 1:24-CV-1171 (AJB/PJE), 2025 WL 3287025, at *4 (N.D.N.Y. Oct. 29, 2025), *report and recommendation adopted*, 2025 WL 3282707 (N.D.N.Y. Nov. 25, 2025) (quoting *Espindola v. U.S. Dep't of Homeland Sec'y*, 1:20-CV-1596 (MAD/DJS), 2021 WL 3569840, at *3 (N.D.N.Y. Aug. 12, 2021) (then quoting 28 U.S.C. § 1361) (emphasis added)).  "By its own terms, the Mandamus Act confers jurisdiction over only officers or employees of the United States; it does not confer jurisdiction over state or local officials."  *Id.* (quoting *Marom v. Town of Greenburgh*, No. 20-CV-3486 (PMH), 2021 WL 797648, at *4 (S.D.N.Y. Mar. 2, 2021)). Accordingly, plaintiff's request for injunctive relief with respect to the District Attorney's Office or Gloversville Police Department are recommended to be dismissed as improperly sounding in mandamus relief.

Insofar as plaintiff seeks "an injunction vacating Plaintiff's plea agreement," "staying the enforcement of Plaintiff's probation pending the resolution of this case," "an order directing reimbursement of all improperly imposed financial penalties and liens" relating to her bail, and "an order enjoining further enforcement of plaintiff's unconstitutional sentence, including any continued supervision under probation," this request for relief is barred by the *Rooker-Feldman* doctrine.   "*Rooker-Feldman* directs federal courts to abstain from considering claims when four requirements are met: (1) the plaintiff lost in state court, (2) the plaintiff complains of injuries caused by the state court judgment, (3) the plaintiff invites district court review of that judgment, and (4) the state court judgment was entered before the plaintiff's federal suit commenced." *McKithen v. Brown*, 626 F.3d 143, 154 (2d Cir. 2010).  In addition to the *Heck* concerns discussed above, all of the *Rooker-Feldman* factors apply here – (1) plaintiff plead guilty in state court ("lost"), (2) she complains of injuries caused by the state court, (3) she seeks review of the state plea/conviction, and (4) the "injuries" of which plaintiff complains existed before this federal action was commenced; thus, the *Rooker-Feldman* bars her requests for injunctive and declaratory relief relating to her criminal plea, conviction, and sentence.  *See McNeil v. Van Houten*, No. 3:25-CV-00725 (AMN/MJK), 2025 WL 3171001, at *3 (N.D.N.Y. Nov. 13, 2025) ("To the extent that Plaintiff seeks to challenge his conviction in Tompkins County Court, the *Rooker-Feldman* doctrine bars Plaintiff's claims.  Under *Rooker-Feldman*, federal district courts lack subject matter jurisdiction over suits where "a plaintiff seeks relief that invites a federal district court to reject or overturn a final decision of a state court as to a conviction." *Cathlin v. City of New York*, No. 23-cv-4219, 2023 WL 6929187, at *3

(S.D.N.Y. Oct. 18, 2023) (collecting cases). Here, plaintiff's claims are barred under *Rooker-Feldman* because Plaintiff pled guilty and was convicted in state court before bringing this action.") (citing *Moalawi v. James*, No. 22-cv-6770, 2023 WL 4817618, at *2 (S.D.N.Y. July 27, 2023) (finding that *Rooker-Feldman* barred the plaintiff's challenge to his state court conviction under Section 1983)).

Finally, as noted above, to the extent plaintiff seeks this Court to direct federal agencies to conduct independent investigations into criminal conduct, such as her allegations of mail tampering and forgery, plaintiff does not have standing to make such a request. *See supra* at 15-18.

It is therefore recommended that all of the above demands for injunctive and declaratory relief be dismissed with prejudice, such that only her requests for monetary damages associated with her conditions of confinement claims remain, assuming she is permitted, and chooses, to replead them.

## V. **Motion for Appointment of Counsel**

Plaintiff contends that appointment of counsel is warranted because her case "involves legal and factual issues," she is "legally disabled and dealing with cyber attacks and mail fraud as I have explained in the attached affidavits," and she is "indigent." Dkt. No. 4 at 1. Plaintiff contends that, due to being a victim of mail fraud, she "cannot confirm whether my attempts to contact legal aid and civil rights organizations have actually reached the intended recipients." *Id.*

Prior to evaluating a request for appointment of counsel, a party must demonstrate that he is unable to obtain counsel through the private sector or public interest firms. *See Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 173-74 (2d Cir. 1989)

(citing Hodge, 802 F.2d at 61).  A motion for appointment of counsel, therefore, must be accompanied with proof of plaintiff's efforts to obtain counsel on his own from the public and private sectors.

Further, it is well-settled that there is no right to appointment of counsel in civil matters.  *See Burgos v. Hopkins*, 14 F.3d 787, 789 (2d Cir. 1994).  The factors to be assessed in reviewing a motion for counsel are well settled and include, "the merits of the plaintiff's case, the plaintiff's ability to pay for private counsel, the plaintiff's efforts to obtain a lawyer, the availability of counsel, and the plaintiff's ability to gather the facts and deal with the issues if unassisted by counsel." *Cooper*, 877 F.2d at 172. Of these, "[t]he factor which command[s] the most attention [is] the merits." *Id.*

In *Terminate Control Corp. v. Horowitz*, the Second Circuit stated:

> [T]he district judge should first determine whether the indigent's position seems likely to be of substance. If the claim meets this threshold requirement, the court should then consider the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in th[e] case why appointment of counsel would be more likely to lead to a just determination.

28 F.3d 1335, 1341 (2d Cir. 1994) (quoting *Hodge v. Police Officers*, 802 F.2d 58, 61 (2d Cir. 1986).  Appointment of counsel must be made carefully to preserve the "precious commodity" of volunteer lawyers for those litigants who truly need a lawyer's assistance.  *Cooper*, 877 F.2d at 172-73.

> Accordingly, in deference to the limited resources available to the court to serve the interests of the many indigent litigants who pursue civil claims before it, and recognizing the "thankless burden" associated with such assignments, *Miller v. Pleasure*, 296 F.2d 283, 285 (2d Cir. 1961), *cert. denied*, 370 U.S. 964, 82 S. Ct. 1592 (1962), courts should not grant such applications indiscriminately, but instead must exercise good judgment and

restraint when doing so. *Cooper v. A. Sargenti Co., Inc.*, 877 F.2d 170, 172, 173-74 (2d Cir. 1989).

*Janneh v. Regal Entm't Grp.*, No. 3:07-CV-0079 (TJM/DEP), 2008 WL 11506720, at *1 (N.D.N.Y. May 21, 2008).

Where a plaintiff does not provide a Court with evidence, as opposed to mere allegations, relating to his claims, such party does not meet the first requirement imposed by the Second Circuit relative to applications seeking appointment of pro bono counsel. *See Harmon v. Runyon*, No. 96-CV-6080, 1997 WL 118379, at *1 (S.D.N.Y. Mar. 17, 1997) (noting that "a threshold requirement" in evaluating a pro se plaintiff's request for the appointment of counsel is that the plaintiff's claim "seems likely to be of substance[,]" which the plaintiff must demonstrate through "evidence . . . support[ing] her claims regarding [the] defendant's allegedly improper actions" (internal citations omitted)); *see also Hodgson v. Wood*, No. 9:22-CV-0275 (LEK/DJS), 2023 WL 12106549, at *2, *2 n.2 (N.D.N.Y. Sept. 7, 2023) (denying appointment of counsel at the summary judgment stage, concluding that the plaintiff provided the Court with only allegations relating to his claim and noting that "[t]he record evidence introduced by defendants in support of their motion for summary judgment does not support plaintiff's claims."). Here, as plaintiff has only filed a complaint, the Court does not yet have evidence before it to assess whether her positions are likely to be of substance. This case is at its earliest stages, and it is unclear whether any claims will proceed beyond the initial review stage. Thus, the request for counsel is premature.

Next, that plaintiff may be inexperienced in legal matters and would prefer the assistance of counsel does not satisfy this Court's requirements for appointment of counsel. "Were that the case, counsel would need to be appointed to nearly every *pro*

*se* plaintiff in civil actions." *Gray v. Fidelity Investment*, 1:20-CV-718 (DNH/CFH), 2020 WL 5942254, at *2 (N.D.N.Y. Oct. 6, 2020). "Lack of knowledge of the law does not suffice to demonstrate that appointment of counsel would increase the likelihood of a just determination in this case." *Id.* (citing *Ballard v. United States*, 11 Civ. 7162 (JSR)(RLE), 2012 WL 3765022, at *1 (S.D.N.Y. Aug. 30, 2012) (denying appointment of counsel and stating that, "other than his general comment that he is 'completely unfamiliar with law,' the plaintiff "has not demonstrated any marked difficulties in presenting his case and fails to state why appointment of counsel would increase the likelihood of a just determination in this case.").

To the extent plaintiff expresses concerns about mail fraud, plaintiff has demonstrated an ability to communicate with this Court regularly about this case. Furthermore, the undersigned has recommended granting plaintiff the ability to proceed by electronic filing, which should ameliorate her concerns. Regardless, plaintiff's claims of interference with her mail appear unsupported and, without more, do not warrant the appointment of counsel at this time.

Further, although plaintiff refers to the complexity of the legal and factual issues in her case, the undersigned has recommended dismissal of all claims except those relating to the condition of her confinement. Thus, if this Report-Recommendation & Order is adopted, even if plaintiff were to successfully amend to set forth conditions of confinement claims, such claims would not be overly complicated. Plaintiff has further largely demonstrated an ability to effectively communicate her requests and concerns through a detailed complaint and various legal filings and motions.

Accordingly, plaintiff has failed to demonstrate that appointment of pro bono counsel is warranted.   Thus, it is recommended that this request be dismissed without prejudice and with leave to renew should this case both survive section 1915 review and dispositive motion practice.

## VI. Conclusion

Wherefore, for the reasons set forth herein, it is hereby

**ORDERED**, that plaintiff's in forma pauperis applications, dkt. nos. 2, 6, 11, be **GRANTED**; and it is

**RECOMMENDED**, that all claims against James P. Riley in his official capacity for monetary damages, dkt. no. 1, be **DISMISSED without prejudice and without leave to amend** pursuant to 28 U.S.C. § 1915(e)(2)(B)(iii); and it is further

**RECOMMENDED**, that plaintiff's Fourteenth Amendment[38] condition of confinement claims – deliberate indifference to serious medical needs and failure to protect – dkt. no. 1, be **DISMISSED without prejudice and with leave to amend**; and it is further

**RECOMMENDED**, that plaintiff's Fourth, Sixth, and Fourteenth Amendment claims, dkt. no. 1, be **DISMISSED without prejudice and without leave to amend in this action** pursuant to *Heck*; and it is further

**RECOMMENDED**, that plaintiff's claims against Abdalla and her requests for this Court to investigate and/or prosecute Abdalla and to investigate and/or prosecute unknown individuals or entities tied to her allegations of mail tampering/forgery, dkt. no.

---

[38] As noted herein, *supra*, plaintiff improperly brought these claims pursuant to the Eighth Amendment.

1, be **DISMISSED with prejudice and without opportunity to amend** for failure to state a claim; and it is further

**RECOMMENDED**, that all claims against Judge Traci DiMezza, dkt. no. 1, be **DISMISSED with prejudice and without leave to amend** due to judicial immunity pursuant to 28 U.S.C. § 1915(e)(2)(B)(i); and it is further

**RECOMMENDED,** that plaintiff's Fourteenth Amendment due process claims against James P. Riley in his individual capacity, dkt. no. 1, be **DISMISSED with prejudice and without leave to amend** due to absolute prosecutorial immunity; and it is further

**RECOMMENDED**, that all of plaintiff's claims for injunctive and declaratory relief be **DISMISSED with prejudice**; and it is further

**RECOMMENDED**, that the Court decline to exercise supplemental jurisdiction over plaintiff's state-law defamation claim, dkt. no. 1, and such claim be **DISMISSED with prejudice and without leave to amend;** and it is further

**RECOMMENDED**, that, based on the above recommendations, the following defendants be **terminated** from this action: Johnathon Spychalski, Lucas Nellis, James P. Riley, the Honorable Traci DiMezza, Kyle L. Davis, James P. Melita, Jason Mitchell Abdalla, and the Unknown Individuals (Doe) defendants; and it is further

**RECOMMENDED**, that plaintiff's motion to file electronically, dkt. no. 10, be **GRANTED**[39]; and it is further

---

[39] It is recommended that if so granted, plaintiff be (1) advised and cautioned that any violation of any condition or any abuse otherwise of participation in electronic case filing will result in the immediate revocation of Plaintiff participating in electronic case filing, and (2) advised that the Court may revoke electronic filing privileges if it determines in its sole discretion that plaintiff's use of the system is not satisfactory.

**RECOMMENDED**, that plaintiff's Motion to Seal the record, dkt. no. 13, be **GRANTED** insofar as there exist any medical documents in the record will be sealed and plaintiff's complaint, dkt. no. 1, which arguably refers to medical concerns[40] plaintiff raises in her Motion to Seal, be limited to case participants, and otherwise **DENIED**; and it is further

**RECOMMENDED**, that plaintiff's request "that the United States Marshals Service be sent to retrieve the full sealed exhibit packet directly from my residence[,]" dkt. no. 3, be **DENIED**;

**RECOMMENDED**, that plaintiff's Motion for Counsel, dkt. no. 4, be **DENIED without prejudice**; and it is

**RECOMMENDED**, that if the District Judge adopts this Report-Recommendation & Order, plaintiff be given thirty days from the filing date of the District Judge's Order adopting this Report-Recommendation and Order to file an amended complaint solely addressing the conditions of confinement claims, and if the plaintiff does not so file pursuant to that Decision & Order, the action may be closed without need for further order of the Court, and if plaintiff does so file, the amended complaint be noticed for substantive sufficiency review pursuant to 28 U.S.C. § 1915(e)(2)(B);[41] and it is

---

[40] The complaint also identifies someone as a victim, apparently in the underlying criminal matter.

[41] If the District Judge, following review of this Report-Recommendation & Order, permits plaintiff to amend her complaint, she is advised "that an amended complaint is intended to completely replace the prior complaint in the action, and thus it "renders [any prior complaint] of no legal effect." *International Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir.1977), *cert. denied sub nom., Vesco & Co., Inc. v. International Controls Corp.*, 434 U.S. 1014 (1978); *see also Shields v. Citytrust Bancorp, Inc*., 25 F.3d 1124, 1128 (2d Cir. 1994). Therefore, plaintiff's amended complaint must include all of the allegations against each of the defendants against whom an opportunity to amend is allowed, such that the amended complaint may stand alone as the sole complaint in this action.  It may not incorporate any portion of the original complaint by reference or include any claims or defendants that the District Judge dismissed with prejudice or without opportunity to amend.

**ORDERED**, that the Clerk serve this Report-Recommendation & Order on plaintiff in accordance with Local Rules.

Pursuant to 28 U.S.C. § 636(b)(1), plaintiff has **FOURTEEN (14)** days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW**.  *See Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 6(a), 72.[42]

Dated: February 2, 2026
Albany, New York

Paul J. Evangelista
U.S. Magistrate Judge

---

[42] If you are proceeding pro se and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. *See* FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal federal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal federal holiday.  *See id.* § 6(a)(1)(c).